Norman E. WAYCOTT

v.

NORTHEAST INSURANCE COMPANY.

Supreme Judicial Court of Maine.

Argued Sept. 9, 1983.

Decided Sept. 21, 1983.

Smith & Elliott, Robert H. Furbish (orally), Randall E. Smith, Saco, for plaintiff.

Monaghan, Leahy, Hochadel & Libby, Christopher C. Dinan (orally), Joseph M. Hochadel, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ.

McKUSICK, Chief Justice.

■ In this action plaintiff Norman E. Waycott, as the personal representative of the estate of his deceased son who died in a motorcycle accident on Route 1 in Ogunquit on May 27, 1981, seeks to recover uninsured motorist benefits under an insurance policy issued the son by Northeast Insurance Company. Granting defendant's motion for summary judgment, the Superior Court dismissed the case.[1] We deny plaintiff's appeal.

■ By Mr. Waycott's theory of suit, his son's death was caused by a hit-and-run driver and his son's estate is entitled to recover from defendant insurance company on the uninsured motorist coverage of the policy issued by it to the son on his motorcycle. His counsel has conceded, both before the Superior Court justice who heard the insurance company's motion for summary judgment and before the Law Court on appeal, that the entire body of evidence that he had available to present at trial is the following: Just prior to the fatal accident, which occurred at about 12:50 a.m. on May 27, 1981, the younger Waycott was driving his motorcycle in a northerly direction on Route 1 through Ogunquit. The

---

1. Summary judgment granted to the defendant is a disposition on the merits and should take the form of "judgment for the defendant." *Cf.* M.R.Civ.P. 50(d). In our mandate we therefore direct modification of the Superior Court judgment, which read "complaint dismissed," and then affirm that judgment as modified.

accident took place near where Grasshopper Lane enters Route 1 from the east. Grasshopper Lane is located on the northerly side and just outside Ogunquit proper, immediately after one rounds a sharp curve in proceeding in a northerly direction. The night was clear and dry. After the accident there were motorcycle skid marks in the right hand northerly lane of Route 1 immediately preceding Grasshopper Lane, running from left to right as one proceeds north toward the lane. In the same area, there were also gouge marks in the road corresponding to the skid marks, and there was residual tar on the foot pedal of the son's motorcycle. The son went off the roadway up a small embankment on the opposite side of Grasshopper Lane where he struck a ledge and suffered fatal injuries. There is no evidence of any physical contact between the son's motorcycle and any other motor vehicle. There are no known eyewitnesses to the accident.

On the basis of that limited evidence, which is all plaintiff would propose to introduce at trial, he claimed below, and now reasserts on appeal, that a jury could rationally conclude that his son's death had been caused by the negligence of an unidentified motorist who had pulled out of Grasshopper Lane to cross the northbound lane of Route 1 in front of the oncoming motorcycle. Plaintiff theorizes that his son, when suddenly confronted with a motor vehicle negligently pulling out of Grasshopper Lane into his path, "laid down" his cycle, thereby succeeding in clearing the other vehicle, but nonetheless losing control of his own.

Plaintiff correctly recognizes that given the delimited evidence he has available, the question on defendant's motion for summary judgment is the same as it would be upon a defense motion for a directed verdict at the end of his presentation of that same evidence to a jury. *See* 2 Field, McKusick & Wroth, *Maine Civil Practice* § 56.2a, at 36 (2d ed. 1970); 10 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2713.1, at 613 (1983). The

question is whether plaintiff has enough evidence to get to the jury on the liability question. The Superior Court answered that question in the negative, and so do we.

In order for a jury to find liability, it must infer from these sparse evidentiary facts that a second motor vehicle was involved in the fatal accident and that the driver of that vehicle was guilty of negligence that caused plaintiff's son to go off the highway to his death. The jury could arrive at such a compounding of inferences only through speculation and conjecture.

■ The involvement of another vehicle is suggested only by the proximity of the accident to an intersection of Route 1 with a side road. Assuming that a jury could from that scanty circumstance infer that a second motor vehicle was involved, plaintiff's counsel would have the jury in turn infer that its operator negligently caused the accident from the fact, itself inferred only, that he or she displayed a guilty conscience by fleeing the scene. Even though fleeing the scene in appropriate circumstances may constitute evidence of guilt of causative negligence, *see, e.g., Olofson v. Kilgallon,* 362 Mass. 803, 291 N.E.2d 600 (1973), such an inference can be drawn here only if one has preliminarily inferred that the driver of the assumed second vehicle knew of the fatal collision and of the possibility he or she might be charged with responsibility for it. But we can only speculate as to the knowledge of the driver of a second motor vehicle, if one existed. In fact, plaintiff's theory that his son passed "behind" the assumed second motor vehicle, gives a good reason to suspect that the driver could have driven on unaware of the accident. As a matter of law a jury cannot be permitted to use conjecture to pile up successive inferences to reach the conclusion plaintiff desires.

The policy on which this action is brought provides uninsured motorist benefits for injuries sustained by the insured arising out of the use of a "hit-and-run vehicle," which the policy defines to be one "which causes bodily injury to an insured arising out of

physical contact of such vehicle with the insured." The insurance company urges that the conceded lack of contact with any second motor vehicle also bars plaintiff from any recovery. Plaintiff responds by asserting the invalidity of the policy requirement of physical contact in face of the statutory mandate that uninsured motorist coverage protect against any "hit-and-run motor vehicle." *See* 24–A M.R.S.A. § 2902(1) (1974 & Supp.1982–1983). We need not, however, resolve this legal question because even if the physical contact provision were invalid and unenforcible, the son's personal representative in any event has no evidence of a hit-and-run driver's liability that is sufficient in the aggregate to survive a motion for directed verdict.

This case is an unusual one, for seldom is the complete evidence to be presented by a plaintiff laid out in advance of trial with the delimiting definiteness that we have here. On that meager evidence plaintiff Waycott, as a matter of law, fails to prove any entitlement to recover damages for his son's death from the operator of a hit-and-run vehicle. None of the other arguments made by plaintiff have any merit. Accordingly, we can find no error in the summary judgment granted to defendant insurance company by the Superior Court.

The entry is:

Judgment modified to read: "Judgment for the defendant." As so modified, judgment affirmed.

All concur.